## STATEMENT OF FACTS

1. From in or about January, 2002 to the present time, Keppel AmFELS, a shipyard at the Port of Brownsville, Cameron County, Texas, has utilized labor lease companies (LLC) to supply itself with skilled trade workers such as welders, carpenters, machinists, pipe fitters, electricians, laborers, and others. These LLCs include CPEP Inc., doing business as Port Fabricators (CPEP), and LAMC, Inc., doing business as Port Fabricators (LAMC).

2. CPEP and LAMC are both Texas corporations doing business as Port Fabricators. LAMC held the labor lease contract with AmFELS from 1999 until January 1, 2004. Thereafter CPEP held the labor lease contract with AmFELS.

3. Between January, 2002 and September, 2004, AmFELS has paid Port Fabricators, as a result of labor lease contracts, at least $30,000,000 (gross). In this same time period, Port Fabricators has employed at least 1,000 labor lease employees to fulfill the contract with AmFELS. Of these employees, more than 500 were identified as having provided invalid proof of eligibility for employment. Starting as early as 2002, Port Fabricators knowingly employed persons that were not authorized to work in the United States to perform labor at AmFELS. Said unauthorized laborers worked under false, fraudulent or otherwise non-matching Social Security numbers, and false, fraudulent or fictitious resident alien cards.

4. Under the provisions of the Immigration Reform and Control Act of 1986 (IRCA), as amended, CPEP and LAMC are required to request certain identification documents prescribed by statute or regulation authorizing evidence of employment and identity presented by the applicant and examine such documents to make a determination of the document's authenticity and relation to the applicant. CPEP and LAMC are further required by the IRCA to complete an I-9 verification form contemporaneous with examination; in the presence of the applicant; and within three (3) days of the applicant's date of hire.

5. Between January, 2002 and September, 2004, Port Fabricators personnel clerks Rolando Villanueva (VILLANUEVA) and Ernesto Casas (CASAS) were responsible for recruiting and hiring employees for LAMC and CPEP to work at AmFELS. One of their duties as personnel clerks was to verify that each LAMC and

Attachment "A"

CPEP applicant was legally authorized to work in the United States. This verification process includes inspecting and photocopying identifying documents such as Social Security cards, birth certificates and resident alien cards (I-551s), while the applicant is present.

 6. VILLANUEVA and CASAS, employed as personnel clerks for CPEP and LAMC, knowingly and willfully, hired, recruited, and referred for a fee, aliens, including Rogelio Rocha-Cruz, Andres Perez, Jose Amparo Martinez-Cardenas, and Raul Mejia-Moreno, for employment in the United States, knowing that such aliens were unauthorized aliens, by means of hiring aliens who lacked identification documents necessary to establish employment eligibility; accepting apparently false or fraudulent documents; requiring unnecessary monetary compensation as a condition of employment; and selling or transferring fraudulent identification documents.

After hiring these aliens for employment, CPEP and LAMC continued to employ such aliens in the United States knowing that such aliens were or had become unauthorized aliens with respect to such employment, by means of selling or transferring fraudulent identification documents; rehiring or referring such aliens to other LLCs supplying workers for AmFELS; inducing or encouraging aliens to change their names or appearances; and instructing and encouraging aliens to reapply for future employment with CPEP, LAMC, or other LLCs.

 7. VILLANUEVA and CASAS also knowingly encouraged and induced aliens to come to, enter, and reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, and residence was or would be in violation of law, by hiring aliens for daily employment with knowledge that such employment would invalidate the alien's border-crossing privileges, causing each subsequent entry to be in violation of law; and with knowledge that any residence in the United States would be in violation of law.

 8. VILLANUEVA and CASAS knowingly completed and caused to be completed and falsely attested to employment documents, applications, and Immigration and Naturalization Service (INS) forms, including form I-9, knowing that these immigration-related employment documents contained false information, including false, fraudulent

and fictitious resident alien card numbers and Social Security card numbers.

9. VILLANUEVA and CASAS possessed and transferred fraudulent and valid identification documents, including resident alien cards and Social Security cards to aliens, which were obtained unlawfully from others involved in the trafficking of identification documents. Some of these Social Security numbers belonged to other individuals.

10. VILLANUEVA and CASAS knowingly accepted immigration-related employment documents containing false information as evidence of eligibility for employment in the United States, knowing them to be forged, counterfeited, altered, or falsely made, or to have been procured by means of false claims or statements, or to have been otherwise procured by fraud or unlawfully obtained.

11. Each of these acts were done during and within the course of VILLANUEVA'S and CASA'S employment with CPEP and LAMC, and for some benefit to CPEP and LAMC.

12. Rogelio Rocha-Cruz (Rocha-Cruz) stated that VILLANUEVA told him that he would have to pay to be hired by LAMC. Rocha-Cruz said that VILLANUEVA filled out an application for employment with LAMC, and he was hired. Later, VILLANUEVA told Rocha-Cruz that his identification documents were no longer valid and that he would need a Permanent Resident Alien card (I-551) to continue his employment. VILLANUEVA transferred to Rocha-Cruz a fraudulent I-551 ending in numbers 782. LAMC continued to employ Rocha-Cruz for work at AmFELS. On or about March 1, 2004, VILLANUEVA told Rocha-Cruz that he needed to buy a new Social Security card with a different number. VILLANUEVA offered to sell Rocha-Cruz a fraudulent Social Security card and a fraudulent I-551.

On or about April 19, 2004, CASAS transferred to Rocha-Cruz a fraudulent Social Security card in the name of David Garza, and ending in numbers 9922, and a fraudulent I-551 card in the name of David Garza and ending in the numbers 392. CPEP continued to employ Rocha-Cruz, now under the name David Garza.

13. On or about May 3, 2003, VILLANUEVA transferred to Andres Perez a

fraudulent Social Security card ending in 1774, and a fraudulent I-551 ending in 740, and Andres Peres was hired by CPEP. One year later, VILLANUEVA told Andres Perez that he would have to buy new fraudulent identification documents. VILLANUEVA transferred to Andres Perez a fraudulent I-551 ending in the number 740. CPEP continued to employ Andres Perez.

    14. On or about March 2, 2003, Jose Amparo Martinez-Cardenas (Martinez-Cardenas) presented a Social Security card to VILLANUEVA who accepted it as proof of eligibility for employment, knowing it was fraudulent. VILLANUEVA told Martinez-Cardenas that he would have to pay VILLANUEVA to work for LAMC. After paying the money, LAMC hired Martinez-Cardenas. VILLANUEVA later told Martinez-Cardenas that his identification document was no longer valid, and he would need to obtain additional documents. VILLANUEVA transferred to Martinez-Cardenas a fraudulent I-551 ending in 363. LAMC continued to employ Martinez-Cardenas.

On or about May 1, 2004, CASAS offered to rehire Martinez-Cardenas at CPEP, but told Martinez-Cardenas that he would have to purchase additional identification documents. CASAS transferred to Martinez-Cardenas a fraudulent I-551 in the name of Enrique Reynaga and ending in 764, and a fraudulent Social Security card in the same name and ending in 2565. CASAS told Martinez-Cardenas that this Social Security number was assigned to another person. CPEP rehired Martinez-Cardenas under the name of Enrique Reynaga.

    15. On or about March 3, 2003, Raul Mejia-Moreno (Mejia-Moreno) presented VILLANUEVA with a fraudulent Social Security card and "Mississipi" identification card. VILLANUEVA accepted the documents as proof of eligibility for employment in the United States, knowing they were fraudulent. VILLANUEVA required Mejia-Moreno to pay money for the job, and LAMC hired Mejia-Moreno.

On or about August 1, 2003, VILLANUEVA told Mejia-Moreno that he needed to have a resident alien card as well as a Social Security card. The next day, VILLANUEVA accepted as eligibility for employment in the United States a false I-551 ending in 803. LAMC continued to employ Mejia-Moreno. One year later, Mejia-Moreno presented a Social Security card in the name of Jesus Villafuerter and ending

in 4354 to VILLANUEVA.  VILLANUEVA transferred to Mejia-Moreno a fraudulent I-551 in the name of Jesus Villafuerter and ending in 577.  CPEP rehired Mejia-Moreno under the name of Jesus Villafuerter.

16. In total, ICE agents interviewed more than forty former employees of Port Fabricators who all stated that VILLANUEVA and CASAS knew they were ineligible for employment when they were hired, and were sold.

17.  Two office employees worked for Port Fabricators as office clerks admitted that they filled out the I-9 employment eligibility verification forms without seeing the employees or the documents presented at the time of completion.  Both further stated that they had not received sufficient training regarding these forms, but they believed that some of the hires were improper because some of the identification documents were suspiciously poor quality, such as the misspelling of Mississippi.

18. Based on review of documents, ICE agents determined that 624 CPEP employees used or possessed false or fraudulent resident alien card (I-551) numbers, 399 Social Security cards used as proof of eligibility were false, and 263 employees were reported as using non-matching Social Security numbers.